UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 11-CIV-24142-SEITZ/SIMONTON

FIVE FOR ENTERTAINMENT S.A. d/b/a
FIVE LIVE ENTERTAINMENT, *et al.*,

      Plaintiffs,

vs.

RAMON LUIS AYALA RODRIGUEZ
a/k/a DADDY YANKEE, *et al.*

      Defendants.
_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
COUNTS 2 AND 5-9 OF THE COMPLAINT**

Defendants, Ramon Luis Ayala Rodriguez ("Ayala"), El Cartel Records, Inc. ("EC Records"), Icaro Services Inc. d/b/a Icaro Booking Services ("Icaro"), and Edgar Baldiri Martinez ("Baldiri"), reply to Plaintiffs' *Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 2 and 5-9 of the Complaint* [DE 21] (the "Response") by the corresponding section numbers:

**II.**     **Plaintiffs misstate the *Alvi* holding and otherwise fail to address developments in the law regarding defamation and pre-suit notice.**

Plaintiffs rely on a 62-year-old case to argue that Florida's pre-suit notice requirement does not apply to statements published on the Internet. When the Florida Supreme Court decided *Ross v. Gore*,[1] it did not contemplate the publishing outlets now available through the Internet, such as the blog-style web sites at issue in this case, like Ayala's site www.daddyyankee.com/news/.[2] More importantly, *Ross v. Gore* has been superseded on this

---

[1]     48 So. 2d 412, 414 (Fla. 1950).

[2]     DE 1, ¶ 70.

issue by a subsequent amendment to Section 770.01, Florida Statutes. In 1976, Section 770.01 was amended to extend to "other medium."[3] Because this analysis concerns an amendment that is 26 years after *Ross v. Gore*, the decision is not instructive on this issue. For the arguments in Defendants' motion, there is no need to find conflict with *Ross* in order to dismiss the defamation-based claims here for lack of pre-suit notice. Plaintiffs understandably try to narrowly define the issue, arguing that "Florida cases make clear … that pre-suit notice has no applicability to non-media defendants simply because technology now enables private individuals to publish information on the Internet." The argument is misguided for two reasons. First, Defendants are "media" defendants entitled to Section 770.01, Florida Statutes, pre-suit notice for the defamation-based claims, so *Laney v. Knight-Ridder Newspapers, Inc.*,[4] need not be invoked. Second, even if this Court disagrees and finds Defendants are non-media defendants, *Laney* is still good law.

Defendants are media defendants. "The use of the phrase 'non-media defendant' … was not meant to distinguish between individuals and corporations, but rather to separate third parties who are not engaged in the dissemination of news and information through the news and broadcast media from those who are so engaged."[5] Similarly, in *Alvi Armani Med., Inc. v. Hennessey*,[6] this Court reasoned that "a company that allegedly owns, hosts and publishes the offending websites" is entitled to Section 7701.01 pre-suit notice. Here, like *Alvi*, Plaintiffs fatally allege that Defendants own and operate news websites viewed by the consumer-public.[7] Plaintiffs argue that *Alvi Armani Med., Inc. v. Hennessey*,[8] is inapposite because the "defendants' sole business was to provide news and information to the general public" unlike Defendants

---

[3]   *Zelinka v. Americare Healthscan, Inc.*, 763 So. 2d 1173, 1174 (Fla. 4th DCA 2000).

[4]   532 F. Supp. 910, 913 (S.D. Fla. 1982) (finding pre-suit notice requirement extends to non-media defendants).

[5]   *Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376, 1380 (Fla. 4th DCA 1997) (J. Pariente).

[6]   629 F. Supp. 2d 1302, 1308 (S.D. Fla. 2008) (J. Lenard).

[7]   DE 1, ¶ 70 (citing directly to a portion of Ayala's alleged website's "news" section; which the Court may take judicial notice is a blog-style format that permits posting and comment, just like a forum-style site in *Alvi*).

[8]   629 F. Supp. 2d 1302 (S.D. Fla. 2008) (J. Lenard).

here.[9] Plaintiffs misstate the holding and rationale in *Alvi*. There is no express or implied inference in *Alvi*'s analysis that a defendant must be in the "sole business" of providing news. That language never appears in *Alvi* and succumbs to the holding of *Mancini*, which considered such an argument and expressly rejected it.[10] Further, Plaintiffs' careful analysis of *Alvi* must have included review of *Zelinka v. Americare Healthscan*, which this Court distinguished in *Alvi*. This Court distinguished *Zelinka* because the defendant in the case was a private individual posting statements on a forum website owned and operated by another.[11] There were no allegations of ownership or control over the site. Further, the court declined to find that the ownership or operation of an Internet site did not constitute "other medium" for the purposes of Section 770.01 pre-suit notice.[12] Consequently, the rationale and holding of *Alvi* controls here. There is no credible basis for Plaintiffs' arguments distinguishing *Alvi*.[13]

Even if this Court finds conflict with *Alvi* and the Florida state decisions it relies upon, and finds that Defendants are not alleged to be media defendants, the *Laney* decision still requires pre-suit notice. *Laney* has found criticism but remains good law.[14] When applied to ownership and operation of an Internet website, *Laney* cannot be so easily discarded as Plaintiffs argue. *Laney*'s holding regards gross unfairness in depriving non-media defendants of pre-suit

---

[9]   DE 21 at 8 of 28.

[10]   702 So. 2d at 1378 ("To the extent this argument is based on the fact that defendant is a full-time assistant state attorney as well as a part-time columnist, we discern no logical distinction between defendant and any other columnist.").

[11]   629 F. Supp. 2d at 1308 (citing *Zelinka*, 763 So. 2d at 1175).

[12]   *Alvi*, 629 F. Supp. 2d at 1308.

[13]   Moreover, Plaintiffs fail to regard the burgeoning Florida state court decisions upon which Alvi relied and based its holding regarding pre-suit notice and the Internet. *See Alvi*, 629 F. Supp. 2d at 1307-8 (citing *Canonico v. Calloway*, 35 Med. L. Rptr. 1549 (Fla. Cir. Ct. Feb. 22, 2007); *Holt v. Tampa Bay Television, Inc.*, 34 Med. L. Rptr. 1540, 1542 (Fla. Cir. Ct. Mar. 17, 2005), aff'd by 976 So. 2d 1106 (Fla. 2d. Dist. Ct. App. 2007)). While Plaintiffs disregard this Florida case law, they nonetheless cite both decisions in hopes of a dismissal without prejudice. DE 21 at 9 of 28, n. 2.

[14]   *Laney* was recently cited, albeit on a different point of law, by the U.S. District Court of the Middle District of Florida in *Bayliss v. Cox Radio, Inc.*, 8:10-CV-1030-T-27MAP, 2010 U.S. Dist. LEXIS 111758 **11-12 (M.D. Fla. Oct. 13, 2010), which Plaintiffs cite in their brief [DE 21 at 9 of 28 n. 2].

notice. Read with *Alvi*, *Laney* supports the notion that owners or operators of a web site have the ability and opportunity to take action upon receipt of pre-suit notice required by Section 770.01. Pre-suit notice should be required when brought against any owner or operator of a website.

**III.    Plaintiffs effectively concede that Florida's single action/single publication rule covers aspects of various claims.**

**A.    Plaintiffs misstate the law as Florida's Single Cause of Action/Single Publication Rule does *not* require dismissal of the root defamation claim before dismissal of the duplicative claims.**

Plaintiffs' lead argument on this issue contends that Florida's single action/single publication rule does not apply – yet – because Plaintiffs' underlying defamation claim has not "failed" at this juncture.[15] Notably, Plaintiffs do not and cannot dispute that the single action/single publication rule – if applicable – would bar Plaintiffs' claim for injurious falsehood (Count 6), intentional infliction of emotional distress ("IIED") (Count 7), violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 8), and civil conspiracy to defame (Count 9) to the extent those claims arise from or relate to publication(s) at issue in Plaintiffs' defamation claim (Count 5). This tacit concession demonstrates that if this Court agrees with Defendants that the single action/single publication rule applies now, the rule bars Counts 6-9, at least to the extent they overlap with Count 5 (defamation).

Plaintiffs misstate the law on applying the single action/single publication rule. The rule does not require that the Court first dismiss the defamation claim, as Plaintiffs contend. Plaintiffs seize on language from the *Callaway Land & Cattle Co., Inc. v. Banyon Lakes Co. Corp*. opinion[16] and extrapolate that prerequisite. Plaintiffs are wrong. First, that was not the rationale of the Fourth District Court of Appeal of Florida in *Callaway*. The court states the simple conditions for application of the rule as follows: "In Florida, a single publication gives rise to a single cause of action. *Orlando Sports Stadium, Inc. v. Sentinel Star Co*., 316 So. 2d 607, 609 (Fla. 4th DCA 1975). The various injuries resulting from it are merely items of damage arising

---

[15]    DE 21 at 10, § III(A).

[16]    831 So. 2d 204, 208 (Fla. 4th DCA 2002).

from the same wrong. *Id.*"[17] Second, this Court has previously dismissed duplicative claims under Florida's single action/single publication rule without dismissing the underlying defamation claim. Plaintiffs' comprehensive briefing assures that Plaintiffs are aware that *Callaway* relied, in part,[18] on a decision from another division of this Court: *Trujillo v. Banco Cent. Del Ecuador.*[19] In *Trujillo*, this Court (J. King) heard a motion to dismiss both a defamation claim and a false light invasion of privacy claim.[20] This Court denied the motion to dismiss as to the defamation claim, but dismissed the false light invasion of privacy claim under the single action/single publication rule.[21] There is no basis in law for Plaintiffs' assertion that dismissal of the defamation count is a necessary prerequisite to dismissal of duplicative claims.

Consequently, to the extent that this Court finds counts 6-9 duplicative of count 5 (defamation) under the single action/single publication rule – a point which Plaintiffs concede, in part, at points in their brief[22] – Plaintiffs offer no valid argument as to why those claims should not be dismissed now, regardless of how this Court rules on Plaintiffs' defamation claim.

**B.     Plaintiffs' claims under FDUTPA and for Intentional Infliction of Emotional Distress can persist but only on independent grounds.**

Defendants do not dispute that applicable law permits claims for FDUTPA and for IIED if independent grounds exist. As argued in Defendants' Motion, however, Plaintiffs fail to allege such independent grounds and therefore fail to state claims upon which relief can be granted.

> *1.    Plaintiffs fail to refute Defendants' argument that the FDUTPA claim fails to adequately allege an "unfair" act or practice.*

Plaintiffs look to the *Alvi* decision, quoting the Court's language permitting the FDUTPA claim to persist. But *Alvi*'s rationale on FDUTPA is not applicable here for two reasons. First,

---

[17]    *Callaway Land & Cattle Co.*, 831 So. 2d at 208 (citations in original)

[18]    831 So. 2d at 208.

[19]    17 F. Supp. 2d 1334 (S.D. Fla. 1998).

[20]    *Id.* at 1336-37.

[21]    *Id.* at 1339-40.

[22]    *See, e.g.*, DE 21 at 12 of 28 ("While Plaintiffs' IIED and defamation allegations may overlap…").

Alvi regarded <u>unfair competition</u> amongst competing medical practices. There is no allegation of unfair competition in this case. The parties are in mutually exclusive service-areas. Moreover, as argued in the motion, Plaintiffs fail to identify actionable conduct in Florida. Second, the alleged, wrongful conduct in *Alvi* was greater in scope than the simple defamation allegations here. The defendants in *Alvi* had concocted an elaborate scheme to unfairly compete with the claimants, using fictitious testimonials by fictitious individuals that both (1) defamed the claimants; and (2) sought to drive business to competing practices.

A cursory review of the conduct supporting *Alvi*'s FDUTPA claim demonstrates the gulf between that case and Plaintiffs' allegations here. In *Alvi*, claimants alleged "Defendants have engaged in false, deceptive and unfair business practices in knowingly posting disparaging and false statements … on the website and by creating the impression that posters on the website are bona fide disgruntled patients of Plaintiffs, when in fact the posters are either fictitious persons or undisclosed affiliates of doctors who are on the website's recommended list of 'pre-screened' doctors."[23] The detailed allegations before this Court in *Alvi* presented independent grounds for a FDUTPA claim, unlike this case. Unlike *Alvi*, Plaintiffs allege no nexus between the alleged statements and competition. This nexus is at the heart of *Alvi*, as well as another case cited in *Alvi* and by Plaintiffs, *Army Aviation Heritage Found. & Museum, Inc. v. Buis*,[24] where the court noted that "the defamatory statements were found by Judge Vinson to impugn [claimant's]

---

[23]   629. F.Supp.2d 1302, 1303-4. And the *Alvi* claimants further alleged "Defendants, through their website, provide information to [1] the consumer public … that [2] potential patients heavily rely upon information provided in the website … that Defendant Hennessey [3] receives a monthly fee from hair transplant doctors who are placed on a 'recommended list' of doctors on the website … Defendants … [4] left [alleged statements] posted for extended periods of time, purposefully creating damage to Plaintiffs' reputation …   that [5] Defendants failed to verify the identity of certain posters on the website…." *Id.* at 1306. Just contrasting the five points noted in the *Alvi* quote, Plaintiffs here [1] fail to allege any relationship or impact on the consuming public of Florida or elsewhere; [2] fail to allege any reliance on the defamatory statements by the consuming public; [3] fail to allege an improper benefit gained by Defendants from the alleged, defamatory conduct; [4] rather than allege Defendants fostered and perpetuated the alleged, defamatory statements like *Alvi*, Plaintiffs concede that Defendants have <u>removed</u> the statements from their websites; [5] Plaintiffs allege nothing like the *Alvi* practice of concocting fictitious persons and testimonials as a part of a scheme to unfairly compete.

[24]   504 F. Supp. 2d 1254, 1263.

'business operations' in order to secure 'a business advantage' by [defendants]."[25] This Court would have to find such a nexus and motivation, i.e., "unfair competition," in order to find independent grounds for the duplicative FDUPTA claim. There is no allegation or inference of such unfair conduct in the Complaint.

>   2. *The IIED claim is not based on independent grounds showing outrageous conduct.*

Similar to the FDUTPA claim, Plaintiffs concede some "overlap" of the IIED and defamation claims, [DE 21 at 6] but attempt distinguish their IIED claim, arguing independent grounds exist. Plaintiffs hearken back to their general allegations – incorporated, en masse, into both their defamation claim and the IIED claim – to identify an independent ground for the alleged threats to cancel the tour if "extra-contractual demands were not satisfied." [DE 21 at 6]. That conduct is not sufficient as a matter of law to meet the "outrageous" standard briefed in Defendants' motion. The next proffered basis – disparaging Plaintiffs in Argentina with "local producers" – is one and the same with Plaintiffs' defamation claim. It is not an independent basis. Plaintiffs fail to refute Defendants' argument that the alleged conduct – independent or not – does not rise to the legal standard for "outrageousness" to be actionable as IIED.

Plaintiffs have no answer to Defendants' cited authorities, including requiring "repeated verbal abuse and repeated physical contact to meet the burden of outrageous conduct sufficient to state a claim" for IIED.[26]

For the authorities cited in Defendants' motion, whether Plaintiffs failed to state "extreme and outrageous" conduct can be decided at this stage as a matter of law.[27] The claim should be dismissed, with prejudice.

**IV.   Plaintiffs' arguments on stating an actionable claim for defamation are unavailing.**

**A.   The defamation claim does not state a claim against Ayala, EC Records, or Icaro.**

Plaintiffs' arguments that publication of the alleged statements by these Defendants constitutes defamation are unpersuasive for two reasons. First, Plaintiffs fail to refute

---

[25]   *Id*.

[26]   DE 18 at 13, n. 61.

[27]   DE 18 at 13, n. 62.

Defendants' arguments that the *Twombly* pleading standard requires a greater showing than "information and belief" allegations.[28] Plaintiffs recasting of its Complaint fails to identify sufficient allegations to tie a record label and a performing artist to a ticket booking firm's press release. That an alleged, business relationship existed does not equate to an intentional tortfeasing chain-of-command. Plaintiffs might discover more than their information and belief and return with a proffered, amended pleading. But for now, the elements are not met as to EC Records, Ayala, or Icaro.

**B.      Plaintiffs do not allege other defamatory statements with the requisite particularity.**

Plaintiffs argue that their 188-paragraph complaint alleges other defamatory statements with particularity, and references a hyperlink, inviting this Court to search out the statements, speaker, and conditions to flesh out the claim. This aspect of the claim is not pleaded with the detail necessary to make the alleged statements actionable. "To assert a viable claim for slander the Plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred. Absent sufficient allegations, a claim for slander is properly dismissed for failure to state a cause of action."[29] In alleging defamation based on oral statements, "a plaintiff need not set out the defamatory language verbatim; it is sufficient that the plaintiff set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory."[30] Since Plaintiffs raise the issue of their defamation remainder-claim in the Response, Defendants submit the foregoing authority sets a higher bar for Plaintiffs in an amended pleading. Defendants are entitled to know more about the statements in order to take discovery and prepare a proper defense.

**V.      Plaintiffs fail to rehabilitate their breach of oral contract claim.**

Defendants rest on their arguments regarding this matter. Plaintiffs rely primarily on *Westcap Gov't Sec., Inc. v. Homestead Air Force Base Fed. Credit Union*, which is inapposite

---

[28]    DE 18 at 8-9.

[29]    *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 157-158 (S.D. Fla. 1986) (citing *Hawke v. Broward Nat'l Bank of Fort Lauderdale*, 220 So.2d 678 (Fla. 4th DCA 1969)).

[30]    *Razner v. Wellington Reg'l Med. Ctr.*, 837 So. 2d 437, 442 (Fla. 4th DCA 2002).

because it regards a written contract.[31] The key issue in this entire case is the agreement or not about the timing of payments. Plaintiffs' casual denial that that timing of payment was an essential term of the parties is incredible, given the prevalence of factual allegations on that term in their Complaint.

### VI.     Plaintiffs fail to refute Defendants' authorities on FDUTPA.

Defendants rest on their arguments regarding this matter. Plaintiffs fail to regard Defendants' cited authority, which requires a greater showing in a breach of contract scenario to permit a FDUTPA claim to ride along. Defendants find the recasting of the Complaint fails to elucidate the actionable conduct that is alleged to have taken place in Florida. Finally, the language cited by Plaintiffs that would permit recovery of special damages under FDUTPA does not accord with the act or with Defendants' cited authority. First, this Court's opinion in *Ordonez v. Icon Sky Holdings, LLC* regarded a claimant who had brought a wide assortment of claims, including for trademark violations and unfair competition.[32] Nothing in this Court's opinion indicates that the Court construed FDUTPA's remedies, or the recovery of lost profits under the act. For the purposes of this issue, it seems this Court's language in the opinion regarded lost profits recoverable from other causes of action. Certainly, this Court did not stake out any conflict with Defendants' cited authorities. Ultimately, the only FDUTPA remedy permitted by this Court in *Ordonez* was injunctive relief – not lost profits. Similarly in *Pegasus Imaging Corp. v. Northrop Grumman Corp.*, the claimant brought a series of claims, several of which could support a lost profits remedy, such as the Florida Uniform Trade Secrets Act claim.[33] Moreover, the opinion discusses a Lanham Act claim in conjunction with the FDUTPA claim. Nothing in this decision construes the remedies available under FDUTPA. Plaintiffs fail to distinguish the authorities cited by Defendants on this point.

---

[31]     697  F.2d 911 (11th Cir. 1983).

[32]     Case No. 10-60156-CIV-SEITZ/SIMONTON, 2011 U.S. Dist. LEXIS 96939 (S.D. Fla. Aug. 30, 2011).

[33]     Case No. 8:07-CV-1937-T-27EAJ, 2010 U.S. Dist. LEXIS 118586 (M.D. Fla. Nov. 4, 2010)

## VII. Plaintiffs fail to refute Defendants' arguments on injurious falsehood.

Defendants rest on their arguments regarding this matter. Provided this claim were to survive the single cause of action rule or pre-suit notice deficiencies, the claim still fails to identify an actionable personal property interest.

## VIII. Plaintiffs fail to refute Defendants' arguments on IIED.

Defendants rest on their arguments regarding this matter.

Dated:  March 2, 2012.                                   Respectfully submitted,

 /s/ Joshua B. Spector
Paul D. Turner (0113743)
pturner@pbyalaw.com
Joshua B. Spector (0584142)
jspector@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Ave. Suite 600
Ft. Lauderdale, FL 33301
Telephone: (954) 566-7117
Facsimile: (954) 566-7115

Edwin Prado
Admitted *pro hac vice*
Pradolaw10@gmail.com
PRADO NUNEZ & ASSOCIATES
Del Parque St. 403, 8th Floor
San Juan, PR  00912
Telephone: (787) 977-1411
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2012, I filed the foregoing document with the Clerk of the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                               */s/ Joshua B. Spector*_____
                               Counsel of Record

## SERVICE LIST

Peter Emerson Berlowe
Daniel Eric Vielleville
Assouline & Berlowe, P.A.
3250 Mary Street
Suite 404
Miami, FL 33133
305-567-5576
305-567-9343 (fax)
peb@assoulineberlowe.com
dev@assoulineberlowe.com
*Attorneys for Plaintiffs*
*Available for Services via CM/ECF*

Eric W. Bloom
Tomas Leonard
Winston & Strawn, LLP
1700 K Street, NW
Washington, DC 20006-3502
202-282-5000
282-5100 (fax)
ebloom@winston.com
tleonard@winston.com
*Attorneys for Plaintiffs*
*Available for Services via CM/ECF*

Margaret Ciavarella
Winston, Strawn, LLP
200 Park Avenue
New York, NY 10166-4193
212-294-4656
mciavarella@winston.com
*Attorneys for Plaintiffs*
*Available for Services via CM/ECF*

Joshua B. Spector
Paul D. Turner
Perlman, Bajandas, Yevoli & Albright, P.L.
1000 Brickell Avenue, Suite 600
Miami, Florida 33131
Telephone: (305) 377-0086
Facsimile: (305) 377-0781
jspector@pbyalaw.com
pturner@pbyalaw.com
*Attorneys for Defendants*
*Available for Services via CM/ECF*

Edwin Prado, Esquire
Prado Nufiez & Associates
Del Parque St. 403, 8th Floor
San Juan, PR  00912
(787) 977-1411
pradolaw10@gmail.com
*Attorneys for Defendants*
*Available for Service via CM/ECF*

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086