UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-24142-CIV-SEITZ/SIMONTON

FIVE FOR ENTERTAINMENT S.A., *et al.*,

        Plaintiffs,

vs.

RAMON LUIS AYALA RODRIGUEZ, *et al.*,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS

This matter is before the Court on Plaintiffs' Motion for Dismissal of Defendants' Counterclaims [DE-123]. This case arises from a failed series of concerts in Argentina involving Daddy Yankee, a multiple Grammy award-winning singer of Reggaeton music. Plaintiffs' First Amended Complaint alleges claims for breach of contract, defamation, and various other claims. Defendants have filed a three-count counterclaim alleging two counts of breach of contract and one count of promissory estoppel. The three counts are pled on behalf of all four Defendants against both of the Plaintiffs.

Plaintiffs seek to dismiss Counts I and II as brought by Defendants Baldiri and Icaro and Count III in its entirety. Subsequent to the filing of Plaintiffs' motion, Defendant Baldiri voluntarily dismissed his counterclaims. Because the contracts explicitly permit Icaro to enforce them, the motion is denied as to Counts I and II of the counterclaim. The motion is granted in part and denied in part as to Count III for promissory estoppel because promissory estoppel is not a viable remedy when a contract exists and both sides have admitted to the validity and enforceability of the first of the two contracts.

I. **Facts Pled in Defendants' Counterclaim**

Plaintiff Five Live Entertainment S.A. (Five Live) is an Argentine corporation and Plaintiff Diego De Iraola (De Iraola) is Five Live's principal. Five Live is in the business of producing music concerts. Defendant El Cartel Records, Inc. (El Cartel) is a Puerto Rican corporation in the business of booking musical concerts and tours. Defendant Ramon Luis Ayala Rodriguez a/k/a Daddy Yankee (Daddy Yankee) is a 50% owner of El Cartel and is a musical performer. Defendant Icaro Services, Inc. (Icaro) is a Florida corporation. Defendant Edgar Baldiri Martinez (Baldiri) is the president and registered agent of Icaro.

In March 2010, Baldiri, on behalf of Icaro, began speaking with De Iraola about booking an Argentina tour for Daddy Yankee. The parties anticipated ten concerts in Argentina. On May 24, 2010, Baldiri presented a contract to De Iraola and Five Live for six Daddy Yankee concerts to take place in Argentina between November 12, 2010 and November 20, 2010. Plaintiffs signed the contract and made the first payment under the contract to Icaro on June 8, 2010. The contract was executed by De Iraola on behalf of Five Live and by Baldiri on behalf of Icaro. This contract, the Engagement Contract, required Plaintiffs to make four payments of $205,000 each by November 1, 2010. All payments under the contract were due before Daddy Yankee's arrival in Argentina for the tour.

Under the contract Five Live was also required to make travel arrangements for Daddy Yankee and his personnel, obtain visas for Daddy Yankee and his personnel, and pay all production costs associated with the six concerts. On October 24, 2010, at a meeting in Bogota, Colombia, Baldiri and De Iraola agreed to the terms of a second contract for four additional concerts on the tour (the Second Contract). On October 25, 2010, a payment was made on the

Second Contract and De Iraola began performing under the Second Contract by undertaking production efforts for the additional concerts. The Second Contract required Five Live to pay Icaro four payments totaling $480,000.

On October 27, 2010, Nestor Kirchner, the husband of Argentina's president, passed away. As a result certain tour venues became unavailable on the tour dates and those dates had to be rescheduled.

On November 12, 2010, the final payments became due under both contracts. However, Five Live still owed Icaro approximately $516,000. As a result, Baldiri began emailing De Iraola requesting the final payments and reminding De Iraola that final payment was due prior to Daddy Yankee's arrival in Argentina. On November 13, 2010, six days before the tour was scheduled to start, Baldiri informed De Iraola that, if Icaro did not receive payment in full by November 15, 2010, the tour would be canceled. The payments were not made. Further, a few days before the expected travel date for Daddy Yankee and his personnel, Plaintiffs had not yet obtained visas for them, as required by the Engagement Contract. On November 17, 2010, Defendants canceled the tour. On December 27, 2010, Plaintiffs issued a press release containing statements about Daddy Yankee and Icaro and blaming Daddy Yankee and Icaro for the cancellation of the tour.

Count I of the counterclaim, brought by all Defendants, alleges that Baldiri, acting as Icaro, on behalf of Daddy Yankee and El Cartel entered into the Engagement Contract, the Engagement Contract was valid and enforceable, and Plaintiffs breached the Engagement Contract by failing to pay in full by the due date and by failing to obtain the necessary work permits and visas for Daddy Yankee and his tour personnel. Count II of the counterclaim, brought by all Defendants, alleges that Baldiri, acting as Icaro, on behalf of Daddy Yankee and El

Cartel, entered into the Second Contract, the Second Contract was valid and enforceable, and Plaintiffs breached the Second Contract by failing to pay in full by the due date and by failing to obtain the necessary work permits and visas for Daddy Yankee and his tour personnel. Count III, brought by all Defendants, alleges a claim for promissory estoppel based on Plaintiffs' promises to pay Daddy Yankee in full prior to the start of the tour.

## II.   Motion To Dismiss Standard

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the

[factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### III.  Discussion

#### A. *The Motion is Denied as to the Breach of Contract Counterclaims*

Plaintiffs seek to dismiss the breach of contract claims, Counts I and II of the counterclaim, as brought by Icaro.[1] Plaintiffs argue that Icaro's breach of contract claims should be dismissed because it is not in privity with Plaintiffs.[2] According to Plaintiffs, Icaro acted as an agent in the execution of the contracts and, therefore, is not a party to the contracts. Defendants respond by arguing that Icaro was a known agent of a disclosed principal and, as such, has the right to enforce the terms of the contracts. Defendants also point to the language of the contracts, which gives Icaro the right to enforce the contracts.

The language of the contracts explicitly states that the contracts "may be enforced by . . . the agent or agents of each participating Artist." *See* DE-123-1 at 3 and DE-123-2 at 3. Thus, the parties agreed that Icaro, as agent for Daddy Yankee, could enforce the terms of the contracts, which would include bringing breach of contract claims. Plaintiffs have not addressed the

---

[1] Plaintiffs also sought to dismiss the beach of contract claims brought by Baldiri. However, Baldiri's Notice of Voluntary Dismissal [DE-132] of his counterclaims has mooted this portion of Plaintiffs' motion.

[2] In making this argument, Plaintiffs rely, in part, on the Court's February 19, 2013 Order Denying Defendants' Motion to Dismiss [DE-104]. However, Plaintiffs' spin on what was stated in that Order, mischaracterizes the Court's holding and also ignores the procedural posture of the case at the time. The case was at the motion to dismiss stage and, thus, the Court was addressing the sufficiency of the pleadings, not the sufficiency of the evidence before the Court.

language of the contracts it their papers. The contract language is clear and unambiguous and, thus, Icaro may, as agent of Daddy Yankee, bring breach of contract claims. Accordingly, the motion to dismiss the contract claims is denied.

### B. The Motion is Granted in Part and Denied in Part as to the Estoppel Counterclaim

Plaintiffs move to dismiss the promissory estoppel claim in its entirety because the doctrine of promissory estoppel cannot be raised when the dispute is governed by a contract and here the parties agree that they are bound by a contract. Defendants argue that they are permitted to plead in the alternative and that the validity and enforceability of the contracts has not yet been established. Plaintiffs respond that Defendants, in their responses to requests for admission, which are attached to the Amended Complaint, have admitted that the Engagement Contract is valid and binding on the parties and have admitted in their Answer all operative facts establishing that the parties entered into the Second Contract. Thus, Plaintiffs conclude that, having established the existence of the contracts, Defendants cannot plead estoppel.

While generally parties are entitled to plead in the alternative, promissory estoppel is not available as a remedy when the parties have a written contract addressing the relevant issues. *White Holding Co. v. Martin Marietta Materials, Inc.*, 423 Fed. App'x 943, 947 (11th Cir. 2011) (citing *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So.2d 924, 928 (Fla. 4th DCA 2002)). Here, Defendants have admitted, in their responses to requests for admission, that the Engagement Contract is valid and binding on the parties. Thus, the validity and enforceability of the Engagement Contract has been established. Consequently, a claim based on promissory estoppel that covers the terms of the Engagement Contract is not available to Defendants. Plaintiffs, however, have not shown that Defendants have admitted that the Second Contract is

valid and enforceable. Thus, at this point in the proceedings, Defendants may proceed by pleading in the alternative as to the terms of the Second Contract. Accordingly, it is

ORDERED that Plaintiffs' Motion for Dismissal of Defendants' Counterclaims [DE-123] is GRANTED in part and DENIED in part:

a) The motion is DENIED as to Counts I and II for breach of contract.

b) Count III for promissory estoppel is DISMISSED as to all allegations that are based on the obligations set out in the Engagement Contract. Count III may proceed as to the allegations based on the obligations set out in the Second Contract.

DONE and ORDERED in Miami, Florida, this 15th day of July, 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record