UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-24142-CIV-SEITZ

FIVE FOR ENTERTAINMENT S.A., *et al.*,

        Plaintiffs,

vs.

RAMON LUIS AYALA RODRIGUEZ, *et al.*,

        Defendants.
_____/

## ORDER GRANTING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW AND DENYING MOTION FOR REMITTITUR

This matter is before the Court on Defendants' Motion for Judgment as a Matter of Law and Motion for Remittitur [DE-256]. This case arises from a failed series of concerts in Argentina involving Daddy Yankee. The case was tried on breach of contract cross-claims, defamation cross-claims, and injurious falsehood claims. The jury returned a Plaintiffs' verdict on all claims tried. Defendants seek judgment as a matter of law and remittitur on three grounds: (1) Plaintiffs' evidence was insufficient to prove their defamation and injurious falsehood claims; (2) the defamation damages awarded by the jury are excessive; and (3) Plaintiff Five for Entertainment's (Five Live) breach of contract claim fails as a matter of law. Because Plaintiffs failed to prove special damages on the injurious falsehood claim and because the verdict is not supported by the evidence on the breach of contract claim, the motion for judgment as a matter of law is granted in part. The motions are denied in all other respects.

I.    **Background**

This case was tried to a jury in two parts – liability and damages. The liability verdict found that Defendants, not Five Live, breached the Second Contract, Defendants defamed

Plaintiff De Iraola through seven different statements, Defendants made three statements of injurious falsehood about Plaintiff Five Live, and Plaintiffs did not defame Defendants. The jury's Special Verdict on damages awarded Defendants $300,030.00 for breach of the Engagement Contract.[1] The jury also awarded Five Live $382,130.00 for Defendants' breach of the Second Contract and $4,000,000.00 for the injurious falsehood claims. The jury awarded Plaintiff De Iraola $2,000,000.00 in compensatory damages on his defamation claims plus $50,000.00 in punitive damages against Defendant Ayala, $100,000.00 in punitive damages against Defendant El Cartel, and $150,000.00 in punitive damages against Defendant Icaro Services. The Court reduced the judgment by the amount of the punitive damages because the jury failed to follow the Court's instruction not to answer any further questions on the special verdict form if it answered "no" to the question of whether Defendant Baldiri made the defamatory statements knowing the statements were false or with serious doubts as to their truth, and his primary purpose was to indulge ill will, hostility, and an intent to harm. *See* DE-254, 129:25-130:13. The jury answered "no" to that question but proceeded to the remaining questions about punitive damage awards against the other Defendants. Thus, the final judgment did not include the punitive damages awarded by the jury. Defendants now seek judgment as a matter of law on all claims and, in the alternative, remittitur of the defamation damages.

## II. Judgement as a Matter of Law Standard

Judgment as a matter of law in favor of a defendant should be granted when plaintiff has failed to present sufficient evidence to prove an element of the claim. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005). In other words, a court must find that, after

---

[1] Five Live's liability for the breach was determined on summary judgment.

making all inferences in favor of the plaintiff, no jury reasonably could have reached a verdict for the plaintiff on that claim. *Id.* Thus, a court must affirm a jury's verdict "unless there is no legal basis upon which the jury could have found for [the plaintiff]." *Telecom Technical Services, Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004).

### III. Discussion

#### A. *The Motion for Judgment as a Matter of Law is Granted as to the Injurious Falsehood Claim*

In its verdict on liability the jury found that Five Live was harmed as a result of Defendants' statements. The jury then awarded Five Live $4,000,000.00 in damages for its injurious falsehood claims. Defendants seek judgment as a matter of law on Five Live's injurious falsehood claims based on three arguments: (1) Five Live failed to offer sufficient evidence to show pecuniary loss from the statements; (2) Five Live failed to present sufficient evidence to prove damages resulted directly and immediately from the statements' effect on the conduct of third persons; and (3) Five Live failed to establish the statements played a material and substantial part in inducing others not to deal with Five Live. Because Five Live failed to establish that it suffered any actual pecuniary loss as a result of the statements, Defendants' motion is granted.

"An essential element of injurious falsehood is that it caused the victim special damages." *Funny Cide Ventures, LLC v. Miami Herald Publishing Co.*, 955 So. 2d 1241, 1246 (Fla. 4th DCA 2007). Special damages require a "plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999) (quoting W. Page Keeton, et

3

al., Prosser and Keeton on The Law of Torts § 128 at 971 (5th ed. 1984)).  Five Live did not do this.

Five Live asserts that it presented evidence of three specific projects it lost as a result of Defendants' statements: (1) a car racing event with Fire; (2) Broadway shows with PRG; and (3) musical concerts with PRG.  While Five Live did present such evidence, it did not provide any evidence of contracts between Five Live and PRG or Fire.  Thus, the only evidence presented was that Five Live was in negotiations about these events.  Further, Five Live did not produce any evidence establishing how much money was lost as a result of the projects not happening.  The testimony presented was pure speculation.

PRG's representative testified that its plans with Five Live involved bringing musicals and concerts to the interior of Argentina and it has not done that alone or with a partner since.  11/19/13 Tr. 129:10-131:6; 132:3-20.  Further, while both De Iraola and PRG's representative testified about a common formula used in the industry to decide whether to do an event, the formula assumes 100% ticket sales.  11/19/13 Tr. 123:7-23.  Five Live did not present any concrete testimony about how much the concerts and Broadway shows would have made.  There was no testimony about similar shows.  PRG's representative testified that it did produce one Broadway show with another company, but that show was produced in Buenos Aires, not the interior cities.  11/19/13 Tr. 129:18-21.  Further, the testimony about the monetary success of that show was pure speculation.  11/19/13 Tr. 130:17-21 (Q: "About how much money did Time For Fun make off of that show?" A. "I don't know, but quite a lot, I expect. I imagine if it invested $2 million, it would like to make as much as that amount or more.").

The testimony about the car racing event was even less concrete.  De Iraola testified that

4

the car race happened after Fire teamed with another company and it was "very successful" with "almost 100,000 people attend[ing] the first race." 11/19/13 Tr. 67:21-68:6. However, there was no testimony as to how much was made by the other company. All the testimony reflected was that the car racing event "went far beyond our expectations. But I really don't know what were the proceeds." 11/19/13 Tr. 75:16-22. A "very successful" event does not translate to a specific realized pecuniary loss and such vague testimony is insufficient to establish by the greater weight of the evidence the amount of Five Live's pecuniary loss.

As set out above, special damages are a necessary element of an injurious falsehood claim. While Five Live may have established that it was harmed, in a general sense, by Defendants' statements, Five Live did not meet its burden of establishing a realized pecuniary loss, as required for special damages. The evidence about the revenues lost as a result of the lost car race event and the lost Broadway shows was too speculative to establish an actual pecuniary loss and no evidence was presented about the lost revenues for the musical concerts. Consequently, Defendants' Motion for Judgment as a Matter of Law is granted as to the injurious falsehood claim.

    B.    *The Motion for Judgment as a Matter of Law is Denied as to the Defamation Claims*

Defendants also seek judgment as a matter of law on De Iraola's defamation claims for four reasons: (1) De Iraola failed to produce sufficient evidence he suffered damages; (2) De Iraola failed to prove economic and non-economic damages; (3) De Iraola failed to prove the statements in question caused damages; and (4) De Iraola failed to prove that Defendants' statements directly and substantially harmed him. Because De Iraola presented sufficient

5

evidence to establish his defamation claims, the motion for judgment as a matter of law on these claims is denied.

Defendants first argue that De Iraola did not offer sufficient evidence that he was harmed. De Iraola points to his own testimony in support. Specifically, De Iraola relies on his testimony: (1) that he received a threat from one of the local producers causing him to hire security guards; (2) that he started having physical problems such as panic attacks, high blood pressure, nose bleeds, and eye ulcers; and (3) that he had difficulty finding a job afterwards and still struggles with the statements affecting his professional life, especially because the statements are forever on the internet. While Defendants argue that De Iraola offered no documentary evidence to prove any of these damages, they have not offered any authority requiring such documentary evidence. Consequently, drawing all inferences in favor of De Iraola, the testimony was sufficient to show that he suffered damages.

Defendants next argue that De Iraola failed to prove economic and non-economic damages. In response, Plaintiffs maintain that De Iraola proved at least some non-economic damages and because the verdict form did not separate economic from non-economic damages, the Court cannot set aside the award based on the argument that De Iraola did not prove one of the categories of damages which was included in the award. As set out above, De Iraola presented sufficient evidence of non-economic damages. He presented evidence of mental and physical injuries and reputational injuries that followed after Defendants made the statements. These were sufficient to support an award of damages. Further, because the jury awarded a lump sum to De Iraola and did not break the damages down into categories, the Court cannot grant judgment as a matter of law on the economic damages. *See Free v. Baker*, 469 Fed. App'x 786,

790 (11th Cir. 2012).

Third, Defendants assert that De Iraola failed to establish that the statements were the proximate cause of his damages. Essentially, Defendants argue that there was no evidence to show that De Iraola's damages were caused by the defamatory statements, as opposed to Five Live's breach of the Engagement Contract. The jury is entitled to draw reasonable inferences and it was just as reasonable to infer that De Iraola's damages resulted from the defamatory statements as it was to infer that the damages were caused by Five Live's breach of the Engagement Contract. Because the Court must draw all reasonable inferences in favor of Plaintiffs, judgment as a matter of law for failure to prove proximate cause is not appropriate. Further, Defendants' reliance on *Cap Publications, Inc. v. Reakes*, 840 So. 2d 277 (Fla. 5th DCA 2003) is misplaced. In *Cap Publications*, the plaintiff sought damages because she had trouble finding work after being terminated and had suffered emotional harm because of the accusations. However, in *Cap Publications,* the person who heard the statement did not repeat it and was not responsible for the decision to terminate the plaintiff. Thus, there was no connection between the statement and the plaintiff's trouble finding work. This is distinguishable from De Iraola's situation where the statements were repeated numerous times on the internet and the radio, making it reasonable to infer that the widely disseminated statements caused De Iraola's damages.

Finally, Defendants argue that De Iraola failed to show that the statements directly or substantially contributed to his damages. This argument appears to be a repackaging of Defendants' proximate cause argument. Thus, it fails for the same reason. Consequently, the motion for judgment as a matter of law is denied as to De Iraola's defamation claims.

### C. *The Motion for Remittitur is Denied*

In the alternative to judgment as a matter of law, Defendants seek remittitur of the defamation damages awarded to De Iraola because they are excessive. The jury awarded Plaintiff De Iraola $2,000,000.00 in compensatory damages on his defamation claim. Defendants make two arguments in support of remittitur – that the jury must have included punitive damages in its compensatory damages award and that the compensatory damages are excessive. Because the award is not excessive the motion for remittitur is denied.

Defendants assert that, because Defendant Baldiri made the allegedly defamatory statements and the jury did not award punitive damages against him but did award them against other Defendants, the jury must have included punitive damages in the compensatory damages award. In response, Plaintiffs argue that the jury's award of punitive damages against other Defendants shows that the jury did not include punitives in the compensatory damages award. Contrary to Defendants' assertion, there is nothing to indicate that the compensatory damages award included an award of punitive damages. As Plaintiffs point out, the jury understood that punitives were a separate form of damages, based on its award of them against El Cartel, Icaro, and Ayala. *Johnson v. Clark*, 484 F. Supp. 2d 1242 (M.D. Fla. 2007), relied on by Defendants, does not support their argument because in *Johnson*, the jury found that the defendant had acted with "'actual knowledge of the wrongfulness of the conduct; with ill will, hostility or intent to harm [Plaintiff]; or with reckless indifference to [his] rights,' such that an award of punitive damages would have been warranted." *Id.* at 1257 (brackets in original). However, the jury awarded "$0" in punitive damages. *Id.* Consequently, the court found that such findings "strongly suggest[ed]" that the ostensibly compensatory damages actually incorporated a punitive

8

element. *Id.* The opposite occurred here. The jury did not find that punitives were warranted against Baldiri but did understand that they constituted a separate type of damages, not part of compensatory damages. Thus, there is no basis to believe that the jury incorporated a punitive element into the compensatory damages award.

Next, Defendants argue that, because De Iraola failed to establish actual economic harm, the compensatory damages had to be for harm to reputation and mental and emotional suffering and, as such, were excessive for such types of damages. The Court agrees that the damages awarded had to have been based on De Iraola's non-economic damages because the same evidence was used to establish Five Live's and De Iraola's actual pecuniary damages and, as set out above, that evidence was insufficient to establish actual pecuniary losses. Thus, the issue for remittitur is whether $2,000,000.00 is an excessive award for harm to De Iraola's reputation and his mental and emotional suffering.

A court looks to state law to determine if a jury award is excessive. *See Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1446 (11th Cir. 1991). Under Florida law:

> In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:
>
> (a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
>
> (b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
>
> (c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
>
> (d) Whether the amount awarded bears a reasonable relation to the amount of damages

> proved and the injury suffered; and
>
> (e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

Fl. Stat., § 768.74(5). Discussing the statute, the Florida Supreme Court has stated that the statute has not "alter[ed] longstanding principles . . . the trial judge should not sit as a 'seventh juror,' thereby substituting his or her resolution of the factual issues for that of the jury." *Poole v. Veterans Auto Sales & Leasing Co.*, 668 So. 2d 189, 191 (Fla. 1996). Those longstanding principles were explained in *Bould v. Touchette*, 349 So. 2d 1181, 1184-85 (Fla. 1977):

> Where recovery is sought for a personal tort, . . . we cannot apply fixed rules to a given set of facts and say that a verdict is for more than would be allowable under a correct computation. In tort cases damages are to be measured by the jury's discretion. The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.

In other words, a "verdict should not be disturbed unless it is so inordinately large as to obviously exceed the maximum monetary risk which the defendant should assume by its decision to litigate rather than settle a claim." *Aills v. Boemi*, 41 So. 3d 1022, 1028 (Fla. 2d DCA 2010) (quoting *Hawk v. Seaboard Sys. R.R., Inc.*, 547 So.2d 669, 674 (Fla. 2d DCA 1989) (Altenbernd, J., concurring)).

In determining whether to grant remittitur, a court must also consider the actions of the defendant. If a defendant does not assist the jury in establishing a range for a verdict, it is more difficult for a defendant to later suggest that a verdict below the plaintiff's request is somehow excessive. *Aills v. Boemi*, 41 So. 3d 1022, 1028 n.3 (Fla. 2d DCA 2010). Further, a "proper" motion for remittitur must include a suggestion from the moving party as to what an appropriate

damages figure would be. *Hendry v. Zelaya*, 841 So. 2d 572, 575 (Fla. 3d DCA 2003). Defendants did not do either of these things.

At closing arguments, Plaintiffs' counsel suggested that the jury award compensatory damages of $1000 per day or $2000 per day for every day that De Iraola suffered. 11/20/19 Tr. 139:25-140:10. The testimony indicated that De Iraola could not find work for approximately 2 years and 9 months, which would amount to approximately 1000 days, and that he continued to suffer and had been suffering for 1100 days, from the time of the defamation to the time of the trial. Based on that, it appears that the jury awarded De Iraola either $2000 for every day that he could not find work or a bit less than $2000 per day for each of the 1100 days that he had been suffering, as requested by counsel. In other words, the jury awarded De Iraola what he asked for. At trial, Defendants did not offer an alternative amount in compensatory damages. Defendants' only suggestion for the remittitur is for the Court to reduce the compensatory damages to nominal damages, which, under the circumstances, does not seem to be a reasonable alternative to the jury's award. Thus, Defendants have not met their burden in moving for remittitur.

Further, based on Florida law, the compensatory damages were not excessive. There is no evidence that the jury was guided by prejudice, passion, or corruption; or that the jury ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable; or that the jury took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture. Further, the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered and is supported by the evidence. De Iraola's uncontested testimony, which the jury could reasonably believe, was that he was professionally ruined and did not work for nearly three years. He

testified that business people stopped returning his calls and would not respond to emails. The business he had built, Five Live, never did business again. He received threats from a local producer that led to him hiring body guards because he feared for his safety. He further testified that the stress manifested itself physically causing him panic attacks, sleeplessness, high blood pressure, and eye ulcers. As a result, De Iraola went into regular therapy and continues to get therapy. Additionally, the stress and emotional problems led to the break-up of his long-term relationship. Thus, De Iraola testified to suffering extensive professional and personal harm. Consequently, there was sufficient evidence to support a significant award for the harm to his reputation and for his mental and emotional pain and suffering.

In determining whether the award fell within a "reasonable range within which the jury may properly operate," this Court has reviewed the legal authorities and found only a few cases decided under Florida law that addressed remittitur of a defamation compensatory damages award. In *Rety v. Green*, 546 So. 2d 410 (Fla. 3d DCA 1989),[2] the Florida court upheld a trial court remittitur to $2,500,000 of a jury award of $10,000,000 in compensatory damages, which was $2,500,000 more than plaintiff had sought. In that case, as a result of the defendant's concerted campaign to ruin plaintiff, the plaintiff's business was ruined and he was forced to shut the business down after a year of falling sales, he received threats, he became a pariah, for six months he never slept more than two hours, and felt himself "falling apart." *Rety*, 546 So. 2d at

---

[2]Defendants rely heavily on *Johnson v. Clark*, 484 F. Supp. 2d 1242 (M.D. Fla. 2007). The *Johnson* case, however, is not applicable because, as set out above, in that case the remittitur was based not on the amount of the award but on the fact that the jury apparently included punitive damages in the compensatory damages award. Thus, the jury took improper elements of damages into account.

12

417.[3] De Iraola testified to similar harms. His business was ruined and he never conducted business again under the Five Live name. He too received threats, became a pariah professionally, and could not sleep. Additionally, he suffered physically as a result of Defendants' statements and his personal life suffered. His ordeal lasted more than three years and, the jury apparently believed, it was the result of an effort to "hit him hard." Further, the $2,000,000 award is in-line with what De Iraola asked for at trial. Thus, based on the similarity of the facts in this case to *Rety* and analysis of the factors set out in Florida Statute, section 768.74(5), the $2,000,000 award falls within the reasonable range.[4]

### D. The Motion for Judgment as a Matter of Law is Granted in Part as to Five Live's Breach of Contract Claim

Finally, Defendants argue that judgment as a matter of law should be granted on Five Live's breach of contract claim because reliance damages were not pled in the complaint, the evidence did not support the verdict, and Five Live could not establish causation because it had not obtained a venue for one of the shows. Because the evidence does not support the amount of the verdict, the motion is granted in part.

The first two arguments are really a challenge to the amount of damages awarded, while the third addresses whether Five Live proved all of the elements of a breach of contract claim. Therefore, the Court will address the third argument first. Defendants argue that Five Live

---

[3] In *Rety*, the plaintiff also presented evidence of lost income as a result of the defamation. However, assuming the *Rety* jury believed the testimony, the lost income would only have been a small fraction of the $2,000,000.

[4] It appears that Florida courts have allowed large compensatory damages awards in defamation cases, even where there has been no economic damages. *See Destafano v. Adventist Health System Sunbelt*, 973 So. 2d 492 (Fla. 5th DCA 2007) (court reinstated a $1,000,000 compensatory damages award in a defamation case).

13

cannot prevail because it breached the Second Contract by failing to secure a venue for the Bahia Blanca concert and, thus, did not prove causation. The Second Contract did not set a date by which Five Live had to obtain a venue and the date for the Bahia Blanca concert had not yet occurred. Thus, Defendants appear to be making an anticipatory breach argument. However, this was not a claim that had been pled or raised prior to, or even at, trial. Based on Five Live's ability to find venues for all of the other rescheduled concert dates, the jury could reasonably infer that Five Live would have been able to secure a venue for the Bahia Blanca concert. Accordingly, Five Live proved causation and Defendants are not entitled to judgment as a matter of law.

Defendants argue that Five Live could not recover reliance damages because they were not pled in the Amended Complaint. In the Amended Complaint [DE-35], Five Live pled that it had incurred significant out-of-pocket expenses in preparation for the concerts and in unwinding the concerts and had suffered lost profits. In its prayer for relief, Five Live sought compensatory and punitive damages. Federal Rule of Civil Procedure 15(b)(1) permits amendment of the pleadings during trial, if the objecting party cannot show that permitting amendment would prejudice the objecting party. Five Live has failed to show how it was prejudiced by the change in the type of damages sought by Five Live. Consequently, the change in damages sought by Five Live is not a basis for granting judgment as a matter of law.

Defendants also argue that Five Live cannot recover for its out-of-pocket expenses because there was no evidence presented that Five Live, and not De Iraola, made the payments. However, De Iraola's testimony made clear that the money payed belonged to Five Live. *See, e.g.,* 11/19/13 Tr. 86:22-87:2. Consequently, there was sufficient evidence for the jury to find

that Five Live paid the out-of-pocket expenses.

Finally, Defendants argue that the jury's award of $382,130.00 in favor of Five Live on the breach of the Second Contract was not supported by the evidence. During the damages portion of the trial, the Court held that Five Live could recover for its out-of-pocket expenses but could not recover money already paid to Defendants under the contract.[5] 11/19/13 Tr. 32:16-22. After careful review of the testimony, the Court is at a loss to determine how the jury calculated the damages figure that it awarded.

De Iraola testified that Five Live incurred $104,000.00 for air travel related to performance of the contracts (11/19/13 Tr. 78:19-22); $101,000.00 for technical equipment (11/19/13 Tr. 81:7-8); $2500.00 per show for his logistics coordinator for a total of $25,000.00 (11/19/13 Tr. 84:6-12); $7500.00 to his production manager at the rate of $750 per show (11/19/13 Tr. 84:13-14 and 21-23); and $500.00 per show for a total of $5000.00 to his tour manager (11/19/13 Tr. 84:15-16). Based on these numbers, even if the jury had included the disallowed amount paid on the Second Contract, the verdict of $382,130.00 is not supported by the evidence. At most, De Iraola testified that his out-of-pocket expenses for *all* of the concerts, not just those associated with the Second Contract, amounted to $242,500.00. Any amount over that was not proven by the evidence. While De Iraola testified that some of the expenses may have been the same for four or ten concerts, such as airfare to Argentina from Miami and Puerto Rico, De Iraola testified that he paid his personnel on a per concert basis. Therefore, the only

---

[5] De Iraola testified that he had paid Defendants $219,980.00 on the Second Contract. The Court ruled that he could not recover this amount in damages because he had not pled it in the Amended Complaint and, as a result, Defendants would have been prejudiced because they had not taken discovery related to any defenses to recovery of this amount.

out-of-pocket expenses established at trial and relating to the Second Contract are $104,000.00 for airfare, $101,000.00 for technical equipment, $10,000.00 for the logistics coordinator (4 shows x $2500.00 per show), $3000.00 for the production manager (4 shows x $750 per show), and $2000.00 for the tour manager (4 shows x $500.00 per show) for a total of $220,000.00. Consequently, Defendants' motion is granted in part and Five Live's breach of contract damages must be reduced to $220,000.00.

Accordingly, it is

ORDERED that Defendants' Motion for Judgment as a Matter of Law and Motion for Remittitur [DE-256] is GRANTED in part and DENIED in part:

a) The Motion for Judgment as a Matter of Law is granted as to the injurious falsehood claim.

b) The Motion for Judgment as a Matter of Law is denied as to the defamation claims.

c) The Motion for Remittitur is denied.

d) The Motion for Judgment as a Matter of Law is granted in part as to Five Live's breach of contract claim. The amount of damages for breach of the Second Contract is reduced to $220,000.00.

e) The Court will enter an amended final judgment in accordance with this order.

DONE and ORDERED in Miami, Florida, this 14th day of August, 2014.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record

out-of-pocket expenses established at trial and relating to the Second Contract are $104,000.00 for airfare, $101,000.00 for technical equipment, $10,000.00 for the logistics coordinator (4 shows x $2500.00 per show), $3000.00 for the production manager (4 shows x $750 per show), and $2000.00 for the tour manager (4 shows x $500.00 per show) for a total of $220,000.00. Consequently, Defendants' motion is granted in part and Five Live's breach of contract damages must be reduced to $220,000.00.

Accordingly, it is

ORDERED that Defendants' Motion for Judgment as a Matter of Law and Motion for Remittitur [DE-256] is GRANTED in part and DENIED in part:

a) The Motion for Judgment as a Matter of Law is granted as to the injurious falsehood claim.

b) The Motion for Judgment as a Matter of Law is denied as to the defamation claims.

c) The Motion for Remittitur is denied.

d) The Motion for Judgment as a Matter of Law is granted in part as to Five Live's breach of contract claim. The amount of damages for breach of the Second Contract is reduced to $220,000.00.

e) The Court will enter an amended final judgment in accordance with this order.

DONE and ORDERED in Miami, Florida, this _____ day of August, 2014.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record

16